IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL CROWE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 16-175 Erie |
| ) | |
| v. ) | |
| ) | Magistrate Judge Richard A. Lanzillo |
| ROBERT MAXA, ) | |
| ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Daniel Crowe ("Plaintiff"), an inmate at the State Correctional Institution at Albion ("SCI-Albion"), initiated this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendant Robert Maxa ("Dr. Maxa"), the prison physician, violated his Eighth Amendment rights by depriving him of necessary medical care. Plaintiff's motion to proceed *in forma pauperis* was granted on September 7, 2016 (ECF No. 5) and his Complaint was docketed the same day. ECF No. 6.

Presently pending before the Court is Defendant's Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 29. For the reasons set forth below, Defendant's motion will be granted.[1]

**I.    Factual Background**

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636. See ECF Nos. 9, 33.

1

In his Complaint, Plaintiff states that he has suffered from chronic lower back pain since sustaining an injury to his lower back while incarcerated in 2007. Id. ¶ 8. While on parole in 2008, Plaintiff visited a private physician who diagnosed him with bulging discs and prescribed Ultram, a prescription pain reliever, to help him with pain management.[2] Id. Plaintiff's back injury was further exacerbated in 2012 when he was struck by a vehicle. Id. As a result of his injuries, physicians at the State Correctional Institution at Camp Hill continued treating Plaintiff with Ultram during his incarceration at that facility. Id.

Following Plaintiff's transfer to SCI-Albion on May 12, 2014, Dr. Maxa expressed to Plaintiff that he "doesn't care about what other doctors prescribed or recommended" for Plaintiff's treatment. Id. ¶ 9. Dr. Maxa later stated that he didn't like to prescribe narcotics, such as Ultram, for chronic pain. Id. He also allegedly stated to Plaintiff – somewhat awkwardly, it would seem – that "[my] decision not to prescribe Ultram . . . is based on lack of funds or non-medical financial and budgetary considerations." Id. Dr. Maxa directed Plaintiff to treat his back pain with drugs such as Aspirin and Motrin instead of Ultram. Id. ¶ 13. Plaintiff contends that those drugs are so ineffective and "absurd" that their utilization constitutes deliberate indifference to his medical needs. Id. ¶ 19.

On February 26, 2018, Dr. Maxa filed the instant Motion to Dismiss for failure to state a claim. ECF No. 29. Plaintiff responded to the motion on March 19, 2018. ECF No. 34. Dr.

---

[2] Ultram is the brand name version of a drug called Tramadol. See www.mayoclinic.org/drugs-supplements/tramadol-oral-route/description/drg-20068050 (last visited November 2, 2018). According to the Mayo Clinic, Tramadol is an opioid analgesic used to relieve moderate to moderately severe pain. Id. When "used for a long time, it may become habit-forming, causing mental or physical dependence." Id. The Court may take judicial notice of these background facts pursuant to Federal Rule of Evidence 201(b)(2) because they are "not subject to reasonable dispute [and are] capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned." See, e.g., Rankins v. Washington, 2017 WL 4364060, at *3 (W.D. Mich. Sep. 29, 2017) (taking judicial notice of facts presented on the Mayo Clinic's website); Giddings v. Cradduck, 2017 WL 2791345, at *6 n. 4 (W.D. Ark. June 6, 2017) (same); Green v. CDCR, 2016 WL 6124148, at *1 n. 1 (E.D. Cal. Oct. 19, 2016) (same); Arce v. Chicago Transit Authority, 193 F.Supp.3d 875, 881 (N.D. Ill. 2016) (same).

Maxa filed a reply brief on April 6, 2018 (ECF No. 36), and Plaintiff filed a sur-reply on April 16, 2018. ECF No. 37. This matter is fully briefed and ripe for disposition.

## II. Standards of Review

### 1. *Pro se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C. Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same).

### 2. Motion to dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the

3

merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in Conley v. Gibson, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. Twombly, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounded on the Twombly/Iqbal line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

### III. Analysis

In his Complaint, Plaintiff contends that Dr. Maxa violated the Eighth Amendment's prohibition against cruel and unusual punishment by displaying deliberate indifference to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97 (1976) (stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted). To establish a violation of his constitutional right to adequate medical care, a plaintiff is required to allege facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

5

Plaintiff's claims in the instant action focus on Dr. Maxa's decision to treat Plaintiff's chronic lower back pain with over-the-counter drugs rather than Ultram. It is well-settled that "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." Tillery v. Noel, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). Such complaints fail as constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." Tillery, 2018 WL 3521212, at *5 (citing Gause v. Diguglielmo, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over pain medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)).

By the same token, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." Tillery, 2018 WL 3521212, at *5 (quoting Estelle, 429 U.S. at 106). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Thus, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." Hensley v. Collins, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)). See also Wisniewski v. Frommer, -- Fed. Appx. --, 2018 WL 4776165, at *3 (3d Cir. Oct. 3, 2018)

(noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'") (quoting Pearson v. Prison Health Serv., 850 F.3d 526, 535 (3d Cir. 2017)).

In the instant case, there is no question that Plaintiff received "some level of medical care" from Dr. Maxa. Hensley, 2018 WL 4233021, at *3. The allegations in his Complaint reflect that he met with Dr. Maxa and other prison medical personnel to seek treatment for his lower back pain on numerous occasions during the relevant time period. See ECF No. 6 ¶¶ 5-7, 9-13. "Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." Norris v. Frame, 585 F.2d 1183, 1186 (3d Cir. 1978).

Moreover, as noted above, the lone allegation in this action is that Dr. Maxa displayed deliberate indifference to Plaintiff's serious medical needs by directing him to take Motrin for his lower back pain instead of continuing to treat him with Ultram, Plaintiff's preferred drug. An inmate's objection to the type of medication provided by prison physicians is precisely the type of "disagreement between an inmate and doctors over alternate treatment plans" that falls well short of a constitutional violation. Tillery, 2018 WL 3521212, at *5. Indeed, these types of claims frequently arise – and are routinely rejected – in the context of disputes over whether to treat an inmate's chronic pain with a narcotic or non-narcotic pain reliever. See, e.g., Whooten v. Bussanich, 248 Fed. Appx. 324, 326-27 (3d Cir. 2007) (medical staff was not deliberately indifferent for treating migraine headaches with a medication other than the narcotic preferred by plaintiff); Ascenzi v. Diaz, 247 Fed. Appx. 390, 391 (3d Cir. 2007) (no deliberate indifference where plaintiff was provided pain medication and antibiotics instead of narcotic pain relievers for his herniated cervical discs); Castro v. Kastora, 2018 WL 4538454, at *6 (E.D. Pa. Sept. 20,

2018) (use of ibuprofen and Tylenol instead of Oxycodone or other narcotics did not amount to deliberate indifference; "[t]he medical staff did not withhold pain medication [but] merely exercised their medical judgment in providing [plaintiff] with a different medication than what he wanted."). Many courts, including the Third Circuit, have even rejected § 1983 claims involving the precise same drugs at issue in this case. See, e.g., Wisniewski, 2018 WL 4776165, at *3 (finding no Eighth Amendment violation where a prison doctor discontinued the plaintiff's prescription for Ultram and instructed him to buy Motrin in the prison commissary); Gause, 339 Fed. Appx. at 136 (dispute between plaintiff and a prison physician as to whether plaintiff should be treated with Ultram or Motrin did not rise to the level of a constitutional violation); Buehl v. Wexford Healthy Sources, Inc., 2017 WL 914275, at *6 (M.D. Pa. Mar. 8, 2017) (decision to prescribe "over the counter pain medications as needed" and "exercise and strengthening" instead of Tramadol did not amount to deliberate indifference). The Court reaches the same conclusion here.

Plaintiff also alleges, albeit in a conclusory fashion, that Dr. Maxa may have been motivated by budgetary and cost-containment factors in reaching his decision to discontinue Plaintiff's prescription for Ultram. Courts have found plausible claims of medical indifference where prison physicians refuse to provide adequate care for non-medical reasons, such as cost-containment. See, e.g., Robinson v. Corizon Health, Inc., 2016 WL 7235314, at *7 (E.D. Pa. Dec. 13, 2016). However, such claims arise only when a prisoner alleges that "the provision of medical care was *both* inadequate *and* motivated by improper or non-medical reasons." Buehl, 2017 WL 914275, at *7 (emphasis added). See also Pearson, 850 F.3d at 535-536 (noting that a deliberate indifference claim has "two very distinct subcomponents": the physician must have provided "inadequate medical care," and he must have done so "with the requisite state of

8

mind"). The second component – the "intent of the medical provider" – becomes critical only where "the care received by an inmate was clearly inadequate." Robinson, 2016 WL 7235314, at *7.

As discussed above, Dr. Maxa's provision of care was not clearly inadequate. To the contrary, he "merely exercised [his] medical judgment in providing [plaintiff] with a different medication than what he wanted." Castro, 2018 WL 4538454, at *6. Plaintiff's conclusory averment that budgetary factors entered into Dr. Maxa's decision-making is insufficient to render that exercise of medical judgment deliberately indifferent in the absence of otherwise inadequate medical care. See, e.g., Winslow v. Prison Health Services, 406 Fed. Appx. 671, 674-75 (3d Cir. 2011) ("[T]he naked assertion that Defendants considered cost in treating [plaintiff's] hernia does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment."). As such, dismissal is warranted.

## IV. LEAVE TO AMEND

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). This instruction is equally applicable to *pro se* litigants and those represented by counsel. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Because it is not clear that amendment would be futile, Plaintiff will be provided with an opportunity to file an amended complaint within a specified time period following dismissal. Plaintiff is reminded that an amended complaint "must be complete in all respects. It is a new pleading which stands by itself as an

adequate complaint without reference to the complaint already filed." Williams v. Ferdarko, 2018 WL 3653272, at *1 n. 1 (W.D. Pa. Aug. 1, 2018) (quoting Young v. Keohane, 809 F.Supp. 1185, 1189 (M.D. Pa. 1992)).

## V.  CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 29) is GRANTED and Plaintiff's Complaint is dismissed, without prejudice. The Clerk is directed to mark this case "closed." Plaintiff can reopen this case by filing an amended complaint, if so desired, within 20 days of the accompanying order.

/s/ Richard A. Lanzillo
RICHARD A. LANZILLO
United States Magistrate Judge

Dated: November 9, 2018