IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL CROWE, | ) | |
| | ) | |
| Plaintiff | ) | Case No. 1:16-175 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT MAXA, | ) | RICHARD A. LANZILLO |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| Defendant | ) | |
| | ) | OPINION ON DEFENDANT'S |
| | ) | MOTION TO DISMISS |
| | ) | [ECF NO. 44] |

MEMORANDUM OPINION

Presently pending before the Court is Defendant's Motion to Dismiss [ECF No. 44] Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Court will grant Defendant's motion.[1]

I.  Procedural History

Plaintiff Daniel Crowe, an inmate at the State Correctional Institution at Albion, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on September 7, 2016 by filing a Complaint alleging that Defendant Robert Maxa ("Dr. Maxa"), the prison physician, violated his Eighth Amendment rights by denying him necessary medical care. Dr. Maza moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6), arguing that it failed to allege facts sufficient to support a plausible claim that Dr. Maxa acted with deliberate indifference to Plaintiff's serious medical needs. ECF. No. 29. On November 9, 2018, this Court granted

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636. *See* ECF Nos. 9, 33.

1

Defendant's Motion to Dismiss, but also granted Plaintiff leave to file an amended complaint in an effort to cure the deficiencies of his claim. ECF No. 41. Plaintiff filed an Amended Complaint on November 30, 2018. ECF No. 43. Dr. Maxa filed the pending Motion to Dismiss the Amended Complaint on December 20, 2018. ECF No. 44. Plaintiff responded to the motion on February 1, 2019. ECF No. 47. Dr. Maxa filed a reply brief on February 4, 2019. ECF No. 48. Plaintiff filed a sur-reply on February 28, 2019. ECF No. 49. The motion has been fully briefed and is ripe for disposition.

II.  Factual Allegations

In his Amended Complaint, Plaintiff alleges that he went to a sick call appointment with Dr. Maxa for back pain on December 4, 2015. ECF No. 43, ¶ 6. Dr. Maxa reviewed a recent MRI and informed Plaintiff that he had degenerative disc disease in his spine. *Id.* at ¶ 7. Plaintiff then specifically requested Ultram, a prescription medication for his pain. *Id.* at ¶¶ 8, 10). Dr. Maxa refused to prescribe this medication, telling Plaintiff that Ultram was not on the Department of Correction's list of approved medications for financial reasons.[2] *Id.* at ¶ 10. Plaintiff further alleges that he told Dr. Maxa that this was deliberate indifference to his medical care and that Dr. Maxa ended the visit by "denying any and all treatment." *Id.* at ¶¶ 11-13.

---

[2] Ultram is the brand name of a drug called Tramadol. *See* www.mayoclinic.org/drugssupplements/tramadol-oral-route/description/drg-20068050 (last visited August 28, 2018). According to the Mayo Clinic, Tramadol is an opioid analgesic used to relieve moderate to moderately severe pain. *Id.* When "used for a long time, it may become habit-forming, causing mental or physical dependence." *Id.* The Court may take judicial notice of these background facts pursuant to Federal Rule of Evidence 201(b)(2) because they are "not subject to reasonable dispute [and are] capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned." *See, e.g., Rankins v. Washington*, 2017 WL 4364060, at *3 (W.D. Mich. Sep. 29, 2017) (taking judicial notice of facts presented on the Mayo Clinic's website); *Giddings v. Cradduck*, 2017 WL 2791345, at *6 n. 4 (W.D. Ark. June 6, 2017) (same); *Green v. CDCR*, 2016 WL 6124148, at *1 n. 1 (E.D. Cal. Oct. 19, 2016) (same); *Arce v. Chicago Transit Authority*, 193 F.Supp.3d 875, 881 (N.D. Ill. 2016) (same).

2

In the grievance from this encounter, which Plaintiff attached to his Amended Complaint, Plaintiff further alleged that Dr. Maxa "prescribed 'NSAID' medications even though I told him they were not effective from my experience . . . ."[3] ECF No 43-1. Plaintiff's grievance states that this prescription was provided during Plaintiff's first meeting with Dr. Maxa, which meeting Plaintiff identifies as having occurred on December 4, 2015. *Id.*

III. Standards of Review

    1. *Pro se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); *Smith v. U.S. District Court*, 956 F.2d 295 (D.C. Cir. 1992); *Freeman v. Dep't of Corrections*, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997). *See, e.g.,*

---

[3] The acronym "NSAID" refers to "nonsteroidal anti-inflammatory drugs," such as naproxen sodium, ibuprofen, and others. *See* https://www.mayoclinic.org/chronic-pain-medication-decisions/art-20360371?mc_id=us&utm_source=newsnetwork&utm_medium=l&utm_content=content&utm_campaign=mayoclinic&geo=national&placementsite=enterprise&cauid=100721&_ga=2.160092664.473568632.1567020980-51837601.1566583588 (last visited August 28, 2019). NSAIDs are most effective for mild to moderate pain that's accompanied by swelling and inflammation. *Id.* These drugs are commonly used for arthritis and pain resulting from muscle sprains, strains, back and neck injuries, or menstrual cramps. *Id.*

3

*Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (same).

    2. Motion to dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal

4

conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

IV. Analysis

In his Amended Complaint, Plaintiff contends that Dr. Maxa violated the Eighth Amendment's prohibition against cruel and unusual punishment by displaying deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976) (stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted). To establish a violation of his constitutional right to adequate medical care, a plaintiff is required to allege facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197

(3d Cir. 1999). Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Plaintiff's claim in the instant action focuses on Dr. Maxa's decision to decline Plaintiff's request for a prescription of Ultram in favor of non-narcotic NSAIDs to treat the pain associated with his degenerative disc disease. It is well-settled that "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). Such complaints fail as constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over pain medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)).

Similarly, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." *Tillery*, 2018 WL 3521212, at *5

6

(quoting *Estelle*, 429 U.S. at 106). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Thus, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)). *See also Wisniewski v. Frommer*, 751 Fed. Appx. 192, 2018 WL 4776165, at *3 (3d Cir. Oct. 3, 2018) (noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'").

In the instant case, Plaintiff received "some level of medical care" from Dr. Maxa. *Hensley*, 2018 WL 4233021, at *3. The grievances attached to Plaintiff's Amended Complaint[4] show that he met with Dr. Maxa at least twice to seek treatment for his lower back pain during the relevant time period and received a prescription for "NSAID medication." *See* ECF No. 43-1. "Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978).

---

[4] Plaintiff's Amended Complaint includes the allegation that Dr. Maxa "den[ied] any and all treatment." ECF No. 43. However, this allegation is clarified by the grievance Plaintiff attached to his Amended Complaint, wherein he acknowledged that Dr. Maxa prescribed him "NSAID medication" on the same date Plaintiff generally asserts Dr. Maxa denied treatment Read in context, the Amended Complaint and his grievance demonstrate that the denial of treatment alleged by Plaintiff was Dr. Maxa's refusal to prescribe Ultram in favor or NAIDs. Even if the Court were to view the statements in the Amended Complaint and Plaintiff's grievance as contradictory, the Court would properly credit the grievance. *See Sazerac Co., Inc. v. Falk*, 861 F.Supp. 253 (S.D. N.Y. 1994) ("For purposes of motion to dismiss for failure to state claim on which relief can be granted, if allegations of complaint are contradicted by documents made part of complaint, document controls and court need not accept as true allegations of complaint."); *see also Public Lands for the People, Inc. v. U.S. Dept. of Agriculture*, 733 F.Supp.2d 1172. (E.D. Cal. 2010). The Court also notes that Plaintiff's original Complaint specifically acknowledged that Dr. Maxa had prescribed Plaintiff NAIDs for his back pain. ECF 6, ¶13. Further, Plaintiff's original Complaint noted that, on December 4, 2015, Dr. Maxa advised him that "we don't like to prescribe narcotics for *chronic* pain." ECF 6, ¶9 (emphasis in original).

Moreover, as noted above, the lone allegation of deliberate indifference is that Dr. Maxa denied his request for a specific medication. An inmate's objection to the type of medication provided by prison physicians is precisely the type of "disagreement between an inmate and doctors over alternate treatment plans" that falls well short of a constitutional violation. *Tillery*, 2018 WL 3521212, at *5. Indeed, these types of claims frequently arise – and are routinely rejected – in the context of disputes over whether to treat an inmate's chronic pain with a narcotic or non-narcotic pain reliever. *See, e.g., Whooten v. Bussanich*, 248 Fed. Appx. 324, 326-27 (3d Cir. 2007) (medical staff was not deliberately indifferent for treating migraine headaches with a medication other than the narcotic preferred by plaintiff); *Ascenzi v. Diaz*, 247 Fed. Appx. 390, 391 (3d Cir. 2007) (no deliberate indifference where plaintiff was provided pain medication and antibiotics instead of narcotic pain relievers for his herniated cervical discs).

In *Castro v. Kastora*, 2018 WL 4538454 (E.D. Pa. Sept. 20, 2018), the plaintiff alleged that he suffered a broken arm after falling from his top bunk. *Id.* at *2. He had surgery on April 30, 2017, and was prescribed Oxycodone by hospital physicians. *Id.* However, on May 1, 2017, upon his discharge and return to the prison, his prescription of Oxycodone was "taken away/discontinued, and replaced with Tylenol and Ibuprofen." *Id.* In analyzing those allegations, the Court concluded that a doctor's decision to provide Ibuprofen and Tylenol instead of Oxycodone or other narcotics did not state a claim of deliberate indifference. *Id.* at *6. In granting the defendants' motion to dismiss, the Court stated:

> Though [the plaintiff] alleges that he should have been treated with narcotics to manage his pain, these allegations amount to mere disagreement as to the proper medical treatment and [are] insufficient to state a plausible constitutional violation. The medical staff did not withhold pain medication. They merely exercised their medical judgment in providing Castro with a different medication

8

> than what he wanted. This does not state a claim for
> deliberate indifference.

*Id.* (internal citations omitted).

In that same vein, many courts within the Third Circuit have rejected § 1983 claims involving the precise drug at issue in this case—Ultram. *See, e.g., Wisniewski*, 2018 WL 4776165, at *3 (finding no Eighth Amendment violation where a prison doctor discontinued the plaintiff's prescription for Ultram and instructed him to buy Motrin in the prison commissary); *Gause*, 339 Fed. Appx. at 136 (dispute between plaintiff and a prison physician as to whether plaintiff should be treated with Ultram or Motrin did not rise to the level of a constitutional violation); *Buehl v. Wexford Healthy Sources, Inc.*, 2017 WL 914275, at *6 (M.D. Pa. Mar. 8, 2017) (decision to prescribe "over the counter pain medications as needed" and "exercise and strengthening" instead of Tramadol did not amount to deliberate indifference). The Court reaches the same conclusion here.

Plaintiff also alleges that Dr. Maxa stated that the DOC did not include Ultram on a list of approved drugs for financial reasons. Courts have found plausible claims of medical indifference where prison physicians refuse to provide adequate care for non-medical reasons, such as cost-containment. *See, e.g., Robinson v. Corizon Health, Inc.*, 2016 WL 7235314, at *7 (E.D. Pa. Dec. 13, 2016). However, such claims arise only when a prisoner alleges that "the provision of medical care was *both* inadequate *and* motivated by improper or non-medical reasons." *Buehl*, 2017 WL 914275, at *7 (emphasis added). *See also Pearson*, 850 F.3d at 535-536 (noting that a deliberate indifference claim has "two very distinct subcomponents": the physician must have provided "inadequate medical care," and he must have done so "with the requisite state of mind"). The second component – the "intent of the medical provider" –

9

becomes critical only where "the care received by an inmate was clearly inadequate." *Robinson*, 2016 WL 7235314, at *7.

As discussed above, Dr. Maxa's provision of care was not clearly inadequate. Plaintiff's conclusory averment that budgetary factors affected the availability of Ultram and thereby entered into Dr. Maxa's decision-making is insufficient to render that exercise of medical judgment deliberately indifferent in the absence of otherwise inadequate medical care. *See, e.g., Winslow v. Prison Health Services*, 406 Fed. Appx. 671, 674-75 (3d Cir. 2011) ("[T]he naked assertion that Defendants considered cost in treating [plaintiff's] hernia does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment."). As such, dismissal is warranted.

V.      LEAVE TO AMEND

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction is equally applicable to *pro se* litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the Court granted Plaintiff leave to amend after it found that his original Complaint failed to state a claim. Plaintiff's Amended Complaint attempted to cure his pleading deficiency by removing certain factual allegations regarding the care Dr. Maxa provided to him, apparently in an effort to minimize the extent of that care. Despite this disingenuous approach to a curative amendment, Plaintiff's Amended Complaint also failed to state a claim of deliberate indifference. Therefore, Plaintiff having

failed to allege facts to support deliberate indifference against Dr. Maxa despite two opportunities to do so, the Court finds that any further amendment would be futile.

VI. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 44) is GRANTED, and Plaintiff's Amended Complaint is dismissed, with prejudice.

RICHARD A. LANZILLO
United States Magistrate Judge

Dated: August 29, 2019